# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INDEPENDENT WRESTLING.TV, LLC, | : | |
| Plaintiff, | : | |
| v. | : | NO. 21-cv-01139 |
| GAME CHANGER WRESTLING, LLC, | : | JUDGE SAPORITO |
| Defendant. | : | ELECTRONICALLY FILED |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GAME CHANGER WRESTLING, LLC'S MOTION TO DISMISS

John B. Dempsey
jdempsey@mbklaw.com
Myers Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

R. Zachary Gelber
Samuel Steinbock-Pratt
zgelber@gelbersantillo.com
spratt@gelbersantillo.com
(*admitted pro hac vice*)
Gelber & Santillo PLLC
347 West 36th Street, Suite 805
New York, NY 10018
(212) 227-4743

*Attorneys for Game Changer Wrestling, LLC*

## INTRODUCTION

Plaintiff Independent Wrestling.TV ("IWTV") filed this lawsuit alleging that Defendant Game Changer Wrestling, LLC ("Game Changer") breached the terms of a distribution agreement. According to its allegations, IWTV intended to resell the content produced by Game Changer to its clients, and hoped to profit from those third-party sales. However, the terms of the distribution agreement—which IWTV drafted and (if this case proceeds beyond Rule 12, which it should not) will be shown to have been the product of coercion and duress—contained a provision that plainly bars the recovery of precisely the type of damages that IWTV now seeks (i.e., revenue and profits it hoped to make, indirectly, as a result of the shows it hoped Game Changer would create). IWTV attempts in its Opposition Brief to salvage its claims by arguing that these lost-profits are "expectation damages" that, unlike lost profits, are permitted under the contract. This misses the point entirely. Expectation damages can include lost-profits (and other consequential damages, all of which are barred here) and direct damages. To be clear, the type of expectation damages that IWTV seeks in this lawsuit are consequential (indirect) damages, explicitly barred by the contract it foisted onto Game Changer. IWTV's attempt to distinguish between lost profits and revenue is equally unavailing, as the distribution agreement explicitly bars recovery of both.

In response to Game Changer's argument that IWTV's threadbare recital is inadequate to state a claim for breach of the distribution agreement's confidentiality provision, IWTV asserts that its claim should not be dismissed, because it will find out through discovery what the Defendant disclosed and to whom it disclosed such information. IWTV's argument is an admission that the allegation that Game Changer has breached the confidentiality provision is unrooted in any plausible factual allegations. In fact, there are no factual allegations on this point at all.

Finally, IWTV also makes an unsupported argument that it could (though its complaint did not) ask for specific performance. But law in the Third Circuit is clear that a party cannot seek to compel another party to perform on a personal service contract.

For all of these reasons, as well as those set forth in Game Changer's opening brief, the Complaint should be dismissed, and leave to amend, which would be futile, should be denied.

**DISCUSSION**

**I.    The Contractual Limitation of Damages Bars the Only Form of Damages Alleged in the Complaint, Notwithstanding Plaintiff's Newfound Theories.**

Based on the facts as alleged in the Complaint,[1] the Distribution Agreement at issue required Game Changer to provide certain live wrestling programs to IWTV, which IWTV would then sell to third parties through a subscription service or pay-per-view purchases. As explained in Plaintiff's Memorandum in Support of the Motion to Dismiss (the "Memorandum"), *see* ECF No. 10 at 5–7, the only form of injury pleaded in the Complaint based on Game Changer's alleged breach is that the live wrestling programs could not be resold to third parties. This is an archetypal example of consequential damages in the form of lost profits. Accordingly, it is barred by the Distribution Agreement's express limitation on damages. *See* Dist. Agreement § 11(c).

IWTV appears to concede (or at least does not dispute) that it cannot recover its consequential damages, including lost profits. *See* Br. Opp. To Motion To Dismiss ("Opp.") 5–6, ECF No. 13. Instead, IWTV contends that it *can* recover for

---

[1] As previously noted, *see* ECF No. 10 at 2 n.1, Game Changer presumes the truth of adequately pleaded facts for the purpose of this motion. However, Game Changer reserves the right to dispute the characterizations in the Complaint at an appropriate time, and in particular to contend that the Distribution Agreement (which was drafted exclusively by IWTV) was forced upon Game Changer and is the product of fraud and duress.

3

"lost revenue" as a form of expectation damages, and further that it can demand specific performance of the contract. Plaintiff is wrong on both fronts.

### A. IWTV's Lost Profits Are Consequential Damages That Are Barred by the Distribution Agreement

First, as set forth in the Agreement and IWTV's response, Section 11(c) of the Agreement states:

> …NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, REVENUE, DATA OR USE BY ANY PARTY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

See Distribution Agreement § 11(c) (emphasis in original).

IWTV's primary argument is that "Paragraph 11(c) does not exclude expectation damages. But this argument depends on the faulty assumption that expectation damages and consequential damages are mutually exclusive. Thus, since the Distribution Agreement does not expressly "mention . . . expectation damages," *id.* at 5, IWTV reasons that they must be available. Expectation damages are defined as those damages "designed to place the aggrieved in as good a position as would have occurred had the contract been performed." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998) (citing, *inter alia*, Restatement (Second) of Contracts § 347 (1981) ["Restatement"]). Expectation damages can include both direct damages and, in an appropriate case, consequential

4

damages. *See* Restatement, *supra*, §347 (defining a party's "expectation interest" to include "incidental or consequential loss[] caused by the breach"); *see also ATACS Corp.*, 155 F.3d at 670 (addressing a claim for lost profits as expectation damages under Pennsylvania law); *Golden Corral Franchising Sys., Inc. v. Scism*, No. CV1812879ESCLW, 2021 WL 4490233, at *2 (D.N.J. Oct. 1, 2021) (similar, under New Jersey law).² In other words, whether something constitutes expectation damages is entirely unrelated to the question of whether the damages are direct or indirect. The lost profits alleged in IWTV's complaint remain consequential damages, whether they are understood to be part of its expectation interest or not.³

A party cannot recover consequential damages, whatever its expectation interest, if it has contracted away its right to seek such damages, as IWTV did here. Because that is the only form of damages sought by the Complaint, the Complaint must be dismissed. Further, because IWTV's proposed amendments would not

---

² Pursuant to Middle District Local Rule 7.8(a), a copy of the unpublished opinion cited herein is reproduced in the attached Appendix.

³ IWTV does not dispute that its lost profits constitute consequential damages. Nor could it. "Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements." *Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 179 (3d Cir. 2011) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007)). That is precisely the case here: IWTV is complaining of its loss of revenue because it cannot sell certain live wrestling programs to third parties.

solve this central deficiency, amendment would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (holding that amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").

IWTV's effort to draw a distinction between "lost profits" and "lost revenue," is equally unavailing. Both terms as used here refer to the same thing: the money IWTV asserts that it would have made from sales to third parties if the contract had been performed as expected. Indeed, the explicit text of Section 11(c) of the Distribution Agreement bars "any indirect, special [or] consequential damages, including loss of profits [and ] revenue." Where, as here, damages are indirect or consequential—derived from a third party—whether revenue or lost profits, they are waived and may not be recovered.

### B. IWTV Cannot Demand Specific Performance of Game Changer's Services

IWTV also argues that even though it has not demanded specific performance, the Complaint could be amended to seek specific performance. Opp. 5. But under Pennsylvania law, "a court of equity will not grant specific performance of a contract for personal services." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 146 (3d Cir. 2000) (quoting *McMenamin v. Philadelphia Transp. Co.*, 356 Pa. 88, 51 A.2d 702, 703 (1947)).

IWTV's complaint is that Game Changer has (allegedly) not held enough wrestling events for IWTV to distribute. But courts have long recognized that unique performances cannot be compelled. *See, e.g.*, *Blue Pearl Music Corp. v. Bradford*, 728 F.2d 603, 606 (3d Cir. 1984) (holding that court erred in ordering party to recreate destroyed musical works, analogizing to the rule that a "court cannot order [an] opera singer to sing"); Restatement, *supra*, § 367 cmt. b (noting that services provided by "actors, singers and athletes" cannot be the subject of specific performance remedy). Wrestling shows, which are feats of both athleticism and narrative performance, fall comfortably within that rule.

Accordingly, IWTV is not entitled to specific performance of Game Changer's obligation to produce wrestling shows, and amendment of the Complaint on this ground would be futile. *See Burlington Coat Factory*, 114 F.3d at 1434.

**II.   Plaintiff's Threadbare Allegation That the Confidentiality Provision was Breached Cannot be Salvaged by Plaintiff's Attempt to Amend the Complaint Through its Opposition**

As explained in the Memorandum, IWTV's claim that Game Changer breached the Distribution Agreement's confidentiality provision fails for three independent reasons: the claim lacks any factual allegations beyond a threadbare recitation that the provision was breached; IWTV failed to plead damages flowing from this alleged breach; and IWTV's claim that the contract terms constituted

7

"confidential information" was contradicted by the Agreement itself.  *See* Mem. 8–10.

In response, IWTV does not even attempt to defend the absence of a link between the confidentiality clause and damages.  That alone is enough to require dismissal of this claim.

IWTV's other arguments fare little better.  With respect to the sufficiency of the pleading, IWTV merely repeats the rule that only a short and plain statement of the claim is required. Opp. 8.  True enough—but it is well-established that "[c]onclusory allegations" with no factual support to show their plausibility "are insufficient to survive a motion to dismiss." *Lemar v. American Trading Corp.*, 643 F. App'x 79, 82 (3rd Cir. 2016).  Indeed, IWTV admits in its opposition that "information relating to what the Defendant disclosed and to who is not readily available to the Plaintiff."  Opp. 9.  But if IWTV does not know what information Game Changer disclosed, then it is unclear on what basis IWTV can claim that the confidentiality provision was breached.  Not only has IWTV failed to provide adequate factual allegations to make its claim plausible—it has *disclaimed* any knowledge that would tend to provide support for the claim.  It is clear that the confidentiality claim was included in the Complaint solely in an attempt to evade the contractual limitation on consequential damages (an effort that should fail).

8

Finally, IWTV tacitly concedes that the confidentiality provision does not, by its terms, apply to the terms of the Distribution Agreement itself. But IWTV suggests that the provision *does* apply to "the exhibits to the Agreement, which contain pricing and profit-sharing information." Opp. 9. IWTV offers a distinction without a difference.[4] "Confidential Information" is defined by the contract to include only "information that is disclosed by or on behalf of one Party to the other Party." Dist. Agreement § 8(a). As explained in the Memorandum, *see* Mem. 9–10, this clause plainly applies to confidential information belonging to one party or the other that might be disclosed for the purpose of negotiations. The confidentiality provision has no application to terms negotiated by and between the parties as part of the Agreement itself. IWTV did not "disclose[]" to Game Changer the pricing structure of the Agreement. Perhaps IWTV would prefer that the terms of its arrangements with wrestling organizers remain secret, but its bald preference does not amount to a binding contractual term. In any case, no plausible claim has been pleaded by Plaintiff.

---

[4] Additionally, as noted above, IWTV has disclaimed knowledge of what Game Changer supposedly revealed (or to whom), so it is unclear on what basis IWTV now claims that the exhibits, specifically, were disclosed.

9

### III. Plaintiff's Claim for Detrimental Reliance is Insufficient, and Plaintiff has Forfeited any Argument to the Contrary

As explained in the Memorandum, IWTV's claim for "detrimental reliance" is deficient in several respects, including that it wholly duplicates the claim for breach of contract (and fails for the same reasons) and that IWTV has not pleaded several elements of a detrimental reliance claim, including that IWTV took any action in reliance on any alleged promise.  *See* Mem. 11–12.  In its Opposition, IWTV does not dispute these arguments except to state, in conclusory terms, that "the Complaint meets the federal pleading standard with regard to the claim for detrimental reliance." Opp. 9.

This boilerplate denial is not sufficient to prevent dismissal.  Accordingly, the claim for detrimental reliance must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Memorandum, the Complaint should be dismissed.

    Respectfully submitted,

    /s/ John B. Dempsey
    John B. Dempsey
    jdempsey@mbklaw.com
    Myers Brier & Kelly, LLP
    425 Biden Street, Suite 200
    Scranton, PA 18503
    (570) 342-6100

    R. Zachary Gelber
    Samuel Steinbock-Pratt
    zgelber@gelbersantillo.com
    spratt@gelbersantillo.com
    (*admitted pro hac vice*)
    Gelber & Santillo PLLC
    347 West 36th Street, Suite 805
    New York, NY 10018
    (212) 227-4743

    *Attorneys for Defendant Game Changer Wrestling, LLC*

Dated: November 10, 2021

## CERTIFICATE OF SERVICE

I, John B. Dempsey, hereby certify that a true and correct copy of Game Changer Wrestling, LLC's Reply Memorandum of Law in Further Support of Motion To Dismiss was served upon the following counsel of record via the Court's ECF system on this 10th day of November 2021:

>Lars H. Anderson, Esquire
>Hourigan, Kluger & Quinn, P.C.
>600 Third Avenue
>Kingston, PA 18704
>landerson@hkqlaw.com

>/s/ John B. Dempsey
>John B. Dempsey